1  Shelton L. Freeman (AZ #009687)
2  **Rose Law Group, PC**
   7144 E. Stetson Drive, Suite 300
3  Scottsdale, Arizona 85251
   Telephone: (480) 398-3100
4  Facsimile: (480) 505-3925
5  tfreeman@roselawgroup.com
   filings@roselawgroup.com
6
   Kevin P. Shea
7  Seth A. Horvath
8  Elizabeth Z. Meraz
   Aon S. Hussain
9  **Nixon Peabody LLP**
10 70 W. Madison Street, Suite 5200
   Chicago, Illinois 60602
11 Telephone: (312) 977-4400
   Facsimile: (844) 560-8137
12 kpshea@nixonpeabody.com
13 sahorvath@nixonpeabody.com
   ezmeraz@nixonpeabody.com
14 ahussain@nixonpeabody.com
   (admitted pro hac vice)
15
16 *Attorneys for Plaintiffs Caremark,*
   *L.L.C., CaremarkPCS, L.L.C., and*
17 *Caremark IPA, L.L.C.*

FILED ___ LODGED ___
RECEIVED ___ COPY ___

OCT 1 8 2023

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

**SEALED**

18

19    **IN THE UNITED STATES DISTRICT COURT FOR THE**
              **DISTRICT OF ARIZONA**
20

21 Caremark, L.L.C.; CaremarkPCS,
   L.L.C.; and Caremark IPA, L.L.C.,
22
          Plaintiffs,
23                                        Case No. CV–23–01994–PHX–JJT
        vs.
24                                        **REPLY IN SUPPORT OF MOTION**
   Allied Health Services, Inc.; Century  **TO SEAL THIS CASE**
25 Specialty Script, L.L.C; Hematology–
   Oncology Associates of Central New
26 York, P.C.; Highlands Oncology Group,
   P.A.; Hometech Advanced Therapies,
27 Inc.; Los Angeles Hematology Oncology
   Medical Group; Midwest Biologics, Inc.;
28 Mission Wellness Healthcare, L.L.C.;
   North Shore Hematology–Oncology

1   Associates, P.C. d/b/a New York Cancer
    & Blood Specialists; Northeast Georgia
2   Cancer Care, L.L.C.; NuFactor, Inc.;
    Oncology–Hematology Consultants,
3   P.A.; Oncology Pharmacy Services, Inc.;
    Oncology Specialties, P.C.; Piedmont
4   Cancer Institute, P.C.; Regional Cancer
    Care Associates, L.L.C.; Satish A. Shah
5   MD, P.L.LC. d/b/a Pennsylvania Cancer
    Specialists & Research Institute;
6   Senderra Rx Partners, L.L.C.; Superior
    Biologics NY, Inc.; Superior Pharmacy
7   Solutions, Inc. d/b/a Superior Biologics
    IL; Tennessee Oncology, P.L.L.C.; The
8   West Clinic, P.L.L.C.; Titan Health
    Partners, L.L.C.; University of
9   Kentucky; the University of Kentucky
    Board of Trustees; Claude A. "Skip"
10  Berry, in his official capacity as a
    member of the University of Kentucky
11  Board of Trustees; Cathy A. Black, in
    her official capacity as a member of the
12  University of Kentucky Board of
    Trustees; Samuel A.B. Boone, in his
13  official capacity as a member of the
    University of Kentucky Board of
14  Trustees; E. Britt Brockman, in his
    official capacity as a member of the
15  University of Kentucky Board of
    Trustees; Todd Case, in his official
16  capacity as a member of the University
    of Kentucky Board of Trustees; Aaron
17  Cramer, in his official capacity as a
    member of the University of Kentucky
18  Board of Trustees; Ray A. Daniels, in
    his official capacity as a member of the
19  University of Kentucky Board of
    Trustees; Ron Geoghegan, in his official
20  capacity as a member of the University
    of Kentucky Board of Trustees; Brenda
21  Baker Gosney, in her official capacity as
    a member of the University of Kentucky
22  Board of Trustees; Lizzy Hornung, in
    her official capacity as a member of the
23  University of Kentucky Board of
    Trustees; K. Lance Lucas, in his official
24  capacity as a member of the University
    of Kentucky Board of Trustees;
25  Kimberly Scott McCann, in her official
    capacity as a member of the University
26  of Kentucky Board of Trustees;
    Elizabeth McCoy, in her official
27  capacity as a member of the University
    of Kentucky Board of Trustees; David
28  Melanson, in his official capacity as a
    member of the University of Kentucky

1  Board of Trustees; Paula Leach Pope, in
   her official capacity as a member of the
2  University of Kentucky Board of
   Trustees; C. Frank Shoop, in his official
3  capacity as a member of the University
   of Kentucky Board of Trustees; Sandra
4  R. Shuffet, in her official capacity as a
   member of the University of Kentucky
5  Board of Trustees; Hollie Swanson, in
   her official capacity as a member of the
6  University of Kentucky Board of
   Trustees; Robert D. Vance, in his official
7  capacity as a member of the University
   of Kentucky Board of Trustees; Rachel
8  Watts Webb, in her official capacity as a
   member of the University of Kentucky
9  Board of Trustees; and Y Medical
   Associates, Inc.,

10              Defendants.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1          In accordance with L.R.Civ. 5.6 and L.R.Civ. 5.7, Caremark[1] submits this reply in

2    support of its motion to seal this case.

3    **INTRODUCTION**

4          Defendants' opposition attempts to distract the Court from the issue presented by

5    Caremark's motion—whether the Court should seal this case—by discussing various

6    purported defenses to Caremark's claims. *See* Opp. to Mot. at 6–9. These arguments, which

7    Caremark will respond to in due course in briefing its motion to compel arbitration and for

8    a stay, are premature. They have no bearing on whether Caremark has satisfied its burden

9    of showing that this case should be sealed. As discussed below, it has.

10          Defendants do not contest that (i) the parties expressly agreed that any arbitrations

11    would be confidential, (ii) Caremark's contract with each of the Defendants prohibits

12    disclosing the existence and contents of the parties' dispute without Caremark's written

13    consent, and (iii) the filings in this case contain proprietary and confidential information.

14    Rather than comply with their contractual obligations to keep this matter under seal,

15    Defendants argue that a confidentiality agreement they explicitly agreed to is insufficient

16    to overcome the presumption favoring the public's common-law right of access to court

17    records. Opp. to Mot. at 10–17. They also argue that Caremark has failed to articulate

18    compelling reasons for granting the motion to seal. *Id.* at 10–20. The Court should reject

19    these arguments.

20          *First*, Defendants ignore the well-established case law cited in the motion in which

21    federal courts across the country have sealed arbitration awards based on confidentiality

22    provisions in arbitration agreements. *See* Mot. at 6–8. *Second*, Defendants have not refuted,

23    in any manner, the detailed declaration of Steven McCall, Caremark's Vice President of

24    Network Services, which establishes the competitive sensitivity of (i) the terms and

25    conditions related to pharmacy reimbursement in Caremark's pharmacy networks and (ii)

26

27    _____

28    [1] Unless otherwise specified or redefined for clarity, defined terms have the same meaning as in Caremark's motion.

1    the contractual provisions of the Provider Manual. *Id.* at 10–11.

2        For these reasons, and as discussed in further detail below, the Court should enter an

3    order (i) keeping this action under seal and (ii) requiring all filings in this action to be sealed.

4    Alternatively, the Court should enter an order sealing Exhibits 1, 2, 3, 4, 5, 6, and 7 to the

5    complaint, each of which contains Caremark's proprietary information.

6    **ARGUMENT**

7    **I.    The standard to seal the entire case has been satisfied.**

8        As a threshold matter, the Court should reject Defendants' argument that the

9    confidentiality provision that each Defendant accepted has no effect on the Court's decision

10   to seal the entire case. Opp. to Mot. at 12–13. "Confidentiality is a 'paradigmatic aspect of

11   arbitration.'" *See, e.g., Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 71 (2d Cir. 2023).

12   Caremark asks this Court to follow the United States Supreme Court's directive to enforce

13   arbitration agreements "according to their terms," including terms requiring confidentiality.

14   *See id.* (citing *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal

15   quotation marks omitted)); *see also Lamps Plus, Inc. v. Varela,* 139 S. Ct. 1407, 1415

16   (2019) ("The [Federal Arbitration Act] requires courts to 'enforce arbitration agreements

17   according to their terms.'"). Although, as Caremark has acknowledged, some courts have

18   rejected this argument, *see* Mot. at 7–8, Caremark respectfully request that this Court adopt

19   the rationale of courts that have sealed cases based on confidentiality provisions, *see id.* at

20   6–7.

21   **II.    The public interest does not require unsealing this case.**

22       Defendants' argument that there is a public interest in this dispute is unsupported.

23   Opp. to Mot. at 15–17. Since the inception of the Medicare Part D program, the dealings

24   among pharmacies, Medicare plan sponsors, and pharmacy-benefit managers ("PBMs")

25   over reimbursement have been private matters subject to governmental noninterference.

26   *See, e.g.*, 83 Fed. Reg. 16440, at 16590 (April 16, 2018) (noting that plan sponsors have

27   "maximum flexibility" to structure standard terms and conditions, including those relating

28   to reimbursement); 79 Fed. Reg. 29844, at 29874 (May 23, 2014) ("In other words, we

1    disagreed with [the Centers for Medicare & Medicaid Services] becoming a party to

2    discussions between Part D sponsors and pharmacies on price structures or the arbiter of

3    the adequacy of reimbursement methodologies."); 70 Fed. Reg. 42194, at 4244 (Jan. 25,

4    2005) ("Given this market-based approach envisioned by Congress, we are wary of

5    regulating negotiations between private parties particularly regarding the specifics of price

6    negotiations . . . .").[2]

7        Contrary to Defendants' assertions, there is no public benefit to publicizing this case.

8    Each of the Defendants' complaints in the underlying arbitrations seek to nullify certain

9    reimbursement provisions in Defendants' agreements with Caremark to increase

10   Defendants' already lucrative reimbursement from Caremark. *See, e.g,* Compl., ¶¶ 86, 108,

11   235. None of the funds at issue—absolutely ***none***—will monetarily benefit taxpayers, and

12   any disputes over the private contractual arrangements between Caremark and Defendants

13   will not affect the public.

14       Further, Defendants argue that this case should be unsealed so other pharmacies can

15   "benefit from viewing the sealed documents" at issue in Defendants' disputes with

16   Caremark. Opp. to Mot. to Seal at 16. Defendants' reliance on the public-access laws, and

17   on the purported interests of other nonparty pharmacies, to disavow Defendants'

18   confidentiality obligations is completely misguided. *See Stafford,* 78 F.4th at 71 (sealing

19   arbitration award to preclude party seeking to unseal it from using the award in other

20   arbitration proceedings involving other parties); *see also Nixon v. Warner Commc'ns, Inc.,*

21   435 U.S. 589, 598 (1978) (noting that courts are authorized to deny public access that is

22   being used as a "vehicle for improper purposes").

23   **III.    Defendants' remaining arguments fail.**

24       None of Defendants' remaining arguments have any merit. *First*, Defendants assert

25   that certain information regarding Caremark's Part D networks is already on a public

26

27   [2] In 2022, Congress passed the Inflation Reduction Act, which modified the Medicare Act's
     noninterference clause. *See* Pub. L. No. 117-169, §§11001–04, 136 Stat. 1818, 1833–64
28   (2022) (codified in part at 42 U.S.C. §§ 1320f–1320f-7). These changes do not affect any
     of the arguments related to Caremark's motion.

1    litigation docket in *Caremark LLC v. AIDS Healthcare Foundation*, No. CV–21–01913–

2    PHX–DJH (D. Ariz. May 5, 2022). Opp. to Mot. at 20 n.12. The court in *Mission Wellness*

3    *Pharmacy, LLC v. Caremark, LLC*, 641 F. Supp. 3d 673 (D. Ariz. 2022), expressly rejected

4    this argument. *See id.* at 680–81 (finding that reimbursement terms did not lose trade-secret

5    protection merely because they were disclosed on the public docket).

6         The *AIDS Healthcare* court's order, which was entered over Caremark's objection,

7    does not mandate finding that the reimbursement information at issue in this case is no

8    longer protectable. Information does not lose its protected status merely because it is

9    disclosed in a court file, as multiple courts have acknowledged. *See, e.g., Hoeschst Diafoil*

10   *Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 418 (4th Cir. 1999) (concluding that "some

11   courts have embraced the rule that disclosure of information solely in a court's record will

12   not, absent evidence of further publication, destroy the trade-secret status of that

13   information" and that a trade-secret document's "presence in the district court's public files,

14   in and of itself, did not make the information contained in the document 'generally known'"

15   for trade-secret purposes); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 848–

16   49 (10th Cir. 1993) (finding that information retained its secret status, despite being

17   disclosed during court proceedings, where the plaintiff evidenced a continuing intent to

18   maintain the information's secrecy by acting to seal the record); *Kittrich Corp. v. Chilewich*

19   *Sultan LLC*, 2013 WL 12131376, at *4 (C.D. Cal. Feb. 20, 2013) ("[D]isclosure of trade

20   secrets in court documents 'does not necessarily cause [a plaintiff] to forfeit its trade

21   secrets,' absent 'evidence that the secrets have become generally known' to the public

22   during the period they were unsealed, such as by publication.'"); *Equal Rights Ctr. v. Lion*

23   *Gables Residential Trust*, 2010 WL 2483613, at *3 (D. Md. June 15, 2010 (finding that

24   "[t]he fact that similar materials may have been disclosed in another case is not

25   automatically fatal to a request for confidentiality"); *Jadael Inc. v. Elliot*, 2007 WL

26   2480387, at *7–8 (M.D. Fla. Aug. 29, 2007) (denying defendants' motion for summary

27   judgment on plaintiff's trade-secret claim despite the fact that the information in question

28   was "fil[ed] in the Court record"); *MicroStrategy Inc. v. Bus. Objects, S.A.*, 331 F. Supp. 2d

396, 418 (E.D. Va. 2004) ("[T]he mere fact that documents are filed unsealed and are available in public court files does not destroy the secrecy of such documents in the absence of evidence of further publication."); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1254–55 (N.D. Cal. 1995) (trade secrets disclosed in prior court proceeding did not cause trade secrets to lose protection in subsequent proceeding).

*Second*, Defendants argue that the reimbursement terms at issue are no longer protectable because Caremark's Performance Network Program will no longer be in effect beginning in 2024. Opp. to Mot. at 20 n.13. Courts have rejected this argument, noting that trade-secret protection lasts "indefinitely." *See, e.g., Enter. Leasing Co. of Phoenix v. Ehmke*, 3 P.3d 1064, 1070 (Ariz. Ct. App. 1999) (rejecting argument that information was "so stale as to preclude [trade-secret] protection" and finding that "trade-secret status may continue indefinitely so long as there is no public disclosure"). Indeed, "'the age of [] documents' diminishes but does 'not entirely eliminate[] the need to keep them confidential.'" *Mission Wellness*, 641 F. Supp. 3d at 679–80.

*Third*, the fact that the information in question has been disclosed to pharmacies in Caremark's own networks does not diminish its protected status. Opp. to Mot. at 20 n.14. The network pharmacies that receive access to Caremark's confidential information are contractually required to maintain the confidentiality of this information. Mot. Ex. 2, McCall Dec., at ¶ 10. Although Defendants assert that the information is disclosed to pharmacies owned by, or affiliated with, Caremark's largest competitors in the PBM industry, the fact that entities like OptumRx Inc. and Humana Pharmacy Solutions Inc. own, or are affiliated with, some of Caremark's participating pharmacies is immaterial. Even competitor-owned pharmacies are still subject to the confidentiality obligations governing Caremark's networks, and just because a pharmacy and a PBM share the same corporate parent does not mean the pharmacy is at liberty to share Caremark's confidential information with the PBM. *See Mission Wellness*, 641 F. Supp. 3d at 682 ("Caremark's practice of distributing NEFs to pharmacies does not indicate that their content is publicly known.").

**IV.    Alternatively, the Court should seal certain exhibits attached to the complaint.**

Defendants assert that Caremark has failed to demonstrate with sufficient particularity that the filings in this case should be sealed. Opp. to Mot. at 17–20. Defendants are wrong.

Even if the Court were to find that the complaint should be unsealed (which it should not do), Caremark has satisfied the standard to seal certain exhibits attached to the complaint. Notably, Caremark is only required to show that the information that merits protection "might harm [its] competitive standing." *See Nixon*, 435 U.S. at 598; *see also Diaz v. Health Plan Intermediaries Holdings LLC*, 2021 WL 1930290, *3 (D. Ariz. Jan. 26, 2021) (non-trade-secret confidential information was protectable); *BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*, 2021 WL 5578864, at *2 (D. Ariz. Nov. 29, 2021) (same); *GoDaddy.com LLC v. RPost Commc'ns, Ltd.*, 2016 WL 1274120, at *2 (D. Ariz. March 31, 2016) (same). Caremark has more than adequately made this showing.

As set forth in Mr. McCall's declaration, the reimbursement provisions relating to Caremark's Medicare Part D networks provide Caremark with a competitive advantage in the marketplace. Mot. Ex. 2, McCall Dec., at ¶¶ 6, 8–9, 11–13. Exhibit 7 to the complaint, Defendants' dispute letters, contains information concerning the reimbursement structure of Caremark's Part D networks. *See* Compl., Grp. Ex. 7. At a minimum, the Court should seal this exhibit. *See, e.g., Caremark, LLC v. USRC Pharmacy, LLC*, 2023 WL 2973327, at *1 (D. Ariz. April 17, 2023) (sealing arbitration award on the basis that disseminating the confidential information in the award would harm Caremark's competitive standing); *Mission Wellness*, 641 F. Supp. 3d 680, 682 (permitting Caremark to redact reimbursement information).

Further, Mr. McCall's declaration identifies particular contract terms that are treated with the strictest confidentiality and that give Caremark an edge in the marketplace. Mot. Ex. 2, McCall Dec., at ¶ 10. Accordingly, the Court should also allow Exhibits 1, 2, 3, 4, 5, and 6 to the complaint, which contain those terms, to remain under seal.

1

## CONCLUSION

2         For these reasons, Caremark respectfully requests the entry of an order (i) sealing

3   this case and (ii) requiring all filings in this case to be made under seal or, alternatively, (iii)

4   sealing Exhibits 1 through 7 to the complaint.

5   Dated: October 18, 2023                          Respectfully submitted,

6

7

8                                                    Shelton L. Freeman (AZ #009687)
                                                     **Rose Law Group, PC**
9                                                    7144 E. Stetson Drive, Suite 300
                                                     Scottsdale, Arizona 85251
10                                                   Telephone: (480) 398-3100
                                                     Facsimile: (480) 505-3925
11                                                   tfreeman@roselawgroup.com
                                                     filings@roselawgroup.com
12

13                                                   Kevin P. Shea
                                                     Seth A. Horvath
14                                                   Elizabeth Z. Meraz
                                                     Aon Hussain
15                                                   **Nixon Peabody LLP**
                                                     70 W. Madison Street, Suite 5200
16                                                   Chicago, Illinois 60602
                                                     Telephone: (312) 977-4400
17                                                   Facsimile: (844) 560-8137
18                                                   kpshea@nixonpeabody.com
                                                     sahorvath@nixonpeabody.com
19                                                   ezmeraz@nixonpeabody.com
                                                     ahussain@nixonpeabody.com
20                                                   (admitted pro hac vice)
21
                                                     *Attorneys for Plaintiffs Caremark, L.L.C.,*
22                                                   *CaremarkPCS, L.L.C., and Caremark*
                                                     *IPA, L.L.C.*
23

24

25

26

27

28

1 | ORIGINAL of the foregoing filed
on October 18, 2023, with:

2

Office of the Clerk of Court
3 | Sandra Day O'Connor U.S. Courthouse
401 W. Washington St., Suite 130, SPC 1
4 | Phoenix, AZ 85003-2118

5
COPIES emailed on
6 | October 18, 2023, to:

7 | John C. Marcolini
Daniel P. Velocci
8 | Iannitelli Marcolini, PC
5353 N. 16th Street, Suite 315
9 | Phoenix, AZ 85016
Jcm@imlawpc.com
10 | dpv@imlawpc.com
*Counsel for Defendant Mission Wellness Healthcare LLC*
11
Jonathan E. Levitt
12 | Todd Mizeski
Steven L. Bennet
13 | A.J. Barbarito
Frier Levitt LLC
14 | 84 Bloomfield Avenue
Pine Brook, NJ 07058
15 | jlevitt@frierlevitt.com
tmizeski@frierlevitt.com
16 | sbennet@frierlevitt.com
abarbarito@frierlevitt.com
17 | *Counsel for Defendants*
*(except for Mission Wellness Healthcare, LLC)*
18

19 | */s/ Kim M. Hearn*

20

21

22

23

24

25

26

27

28

9