WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Caremark LLC, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>Allied Health Services Incorporated, *et al.*,<br><br>    Defendants. | No. CV-23-01994-PHX-JJT<br><br>**ORDER** |

At issue is Defendants the University of Kentucky, the University of Kentucky Board of Trustees, and Members of the University of Kentucky Board of Trustees' (collectively, "Kentucky") Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 72, MTD), to which Plaintiffs Caremark, L.L.C., CaremarkPCS, L.L.C.; and Caremark IPA, L.L.C. (collectively, "Caremark") filed a Response (Doc. 77, Resp.) and Kentucky filed a Reply (Doc. 78, Reply). The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f).

**I.    BACKGROUND**

Caremark is a third-party pharmacy-benefit manager that contracts with various individual pharmacies and chains, including Kentucky. (Resp. at 5.) The contractual relationship between the parties is governed by a series of documents, including a Provider Agreement executed by Kentucky and Caremark. (MTD at 3.) The Provider Agreement incorporates by reference the 2022 Caremark Provider Manual, which contains a dispute

resolution clause specifying procedures for parties to settle disputes and includes an arbitration agreement. (MTD at 3.)

The Provider Manual's arbitration provision states that "any and all disputes between Provider and Caremark . . . including, but not limited to, disputes in connection with, arising out of, or relating in any way to, the Provider Agreement or to Provider's participation in one of more Caremark networks . . . will be exclusively settled by arbitration." (Doc. 54, Compl. Ex. 2, Provider Manual ¶ 15.09.) Further, the Provider Manual states the conditions an aggrieved party must satisfy before filing arbitration, including issuing a dispute notice and engaging in a dispute conference with the other party. (Provider Manual ¶ 15.09.07.) The Provider Manual also states, "This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ['FAA']." (Provider Manual ¶ 15.09.07.) Finally, the Provider Manual states that arbitrations "must be conducted in Scottsdale, Arizona" and that contracted providers "agree[] to such jurisdiction, unless otherwise agreed to by the parties in writing." (Provider Manual ¶ 15.09.)

Caremark periodically amends the Provider Manual "by giving notice of the terms of the amendment and specifying the date the amendment becomes effective." (Compl. ¶ 93.) On August 2, 2023, Caremark informed its providers, including Kentucky, that an amended Provider Manual would go into effect on August 10, 2023, superseding the prior version. (Compl. ¶ 102.) The amended Provider Manual changed the arbitration venue from AAA to JAMS ("JAMS Amendment"), but it did not otherwise alter the dispute resolution process. (Compl. ¶ 104.) On August 9, 2023, Kentucky allegedly initiated arbitration proceedings before the AAA without first engaging in the dispute resolution process prescribed in the Provider Manual. (Compl. ¶¶ 109, 208–13.)

While the ultimate question before the Court is where the parties must arbitrate, the issue now before the Court is whether sovereign immunity bars Caremark's claims demanding arbitration against Kentucky.

## II. LEGAL STANDARDS[1]

### A. Rule 12(b)(1) – Dismissal for Lack of Subject Matter Jurisdiction

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "Where the jurisdictional issue is separable from the merits of the case, the [court] may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594 F.2d at 733; *see also Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) ("With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction."). The burden of proof is on the party asserting jurisdiction to show that the court has subject matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

### B. Eleventh Amendment Sovereign Immunity

The Eleventh Amendment provides that states enjoy sovereign immunity from suit in federal court. *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 952 (9th Cir. 2008). Under the Eleventh Amendment, a state or arm of the state may not be sued in federal court without its consent. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). "While the [Eleventh] Amendment by its terms does not bar suits against a state by its own citizens . . . an unconsenting state is [nonetheless] immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). Thus, absent a state's waiver of Eleventh Amendment immunity through consent to suit or valid abrogation of that immunity, federal courts may not entertain

---

[1] It its Motion to Dismiss, Kentucky moved for dismissal under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). However, neither Kentucky's Motion to Dismiss nor its briefing adequately raised the Rule 12(b)(6) motion. In any event, the Court finds it appropriate to resolve the issue of dismissal solely under Federal Rule of Civil Procedure 12(b)(1).

a private person's suit against the state. *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254 (2011).

### III. ANALYSIS

Kentucky argues that it is "immune from suit absent waiver of that immunity by the state legislature" because of its status as an arm of the state. (MTD at 3, 7 ("The University of Kentucky has repeatedly been found to be the Commonwealth under the Eleventh Amendment . . . .").) However, the statutory abrogation to which Kentucky refers is not the sole means of waiver. A state may waive its sovereign immunity by contract or through "a 'clear declaration' by the state that it consents to federal jurisdiction." (MTD at 7 (quoting *Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1128 (2003)).) *See Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1032 (2022) ("[A]ny waiver of . . . sovereign immunity must be expressed in clear and unequivocal terms." (citations omitted)). Although the parties dispute which version of their arbitration agreement is valid, Kentucky does not dispute the validity of the entire contract—only the validity of the JAMS Amendment. (Reply at 9 ("[T]he Court need not address the merits of whether the JAMS Amendment was an effective or valid contract that was validly formed between the parties.").) Accordingly, for the purpose of the present Motion, the Court need only determine whether the terms of the Provider Agreement and Provider Manual clearly and unequivocally waive Kentucky's sovereign immunity as to a claim demanding arbitration. *See Chickasaw*, 43 F.4th at 1030.

Kentucky further argues that "the Caremark Agreement, by itself, does not result in an automatic waiver of Eleventh Amendment immunity by the University of Kentucky as to any and all disputes arising out of the Caremark Provider Agreement." (Reply at 5.) Relying on *Caremark v. Chickasaw*, Kentucky concedes it waived its sovereign immunity to a limited extent when it initiated arbitration before AAA, but the scope of its waiver did not extend to the JAMS Amendment absent either state law waiver (Reply at 4) or clear and unequivocal waiver (Reply at 6).

The *Chickasaw* court noted that an arbitration clause—the same arbitration clause included in the 2022 Provider Manual that Kentucky signed—"is an agreement to bring any disputes to a particular forum" but "does not necessarily waive sovereign immunity." *Chickasaw*, 43 F.4th at 1032. "An arbitration agreement may or may not have implications for a tribe's sovereign immunity," and a court may not need to resolve sovereign immunity issues at all to determine whether the parties agreed to arbitrate. The court rejected the tribe's argument "that an arbitration agreement always and necessarily waives tribal sovereign immunity." *Id.* Kentucky urges this Court to arrive at the same conclusion with respect to it.

Importantly, the *Chickasaw* court did not clarify whether a governmental entity waives sovereign immunity by entering into a valid arbitration agreement in the first place. (Reply at 4.) Kentucky recognizes this issue was unresolved by *Chickasaw*. (Reply at 5–6, n.3.) However, the Ninth Circuit's recent decision in *Caremark, LLC v. Choctaw* wholly answers this question. *Caremark, LLC v. Choctaw Nation*, 104 F.4th 81, 88, 95 (9th Cir. 2024). Although neither party included *Choctaw* in its briefs or filed a related notice of supplemental authority with the Court, the Ninth Circuit's decision binds this Court and squarely forecloses Kentucky's position.[2]

Related to the same arbitration clause at issue here, the *Choctaw* court addressed whether the defendant tribe's execution of the Provider Agreement "clearly and unequivocally waived its tribal sovereign immunity such that [the court] had jurisdiction over Caremark's petition to compel arbitration." *Id.* at 88. The *Choctaw* court engaged in a two-part analysis, asking (1) whether the contracts containing the arbitration agreement were validly formed, and (2) whether, under the terms of the valid contract, the tribe "clearly and unequivocally waived its sovereign immunity for arbitration proceedings such that the District of Arizona had jurisdiction over the petition to compel arbitration." *Id.* at 92.

---

[2] While both parties included arguments related to *Ex Parte Young*, the Ninth Circuit's holding in *Choctaw* answers the question of waiver of sovereign immunity and *Ex Parte Young* does not apply to this case.

- 5 -

As to the first part, the court in *Choctaw* found that the tribe "appear[ed] to recognize that it formed valid contracts" when it continued to engage in the reimbursement process for pharmacy claims with Caremark. Despite the tribe's argument that the "arbitration provisions in those contracts are unenforceable," the court held the contracts were validly formed. *Id.* at 89. The same applies to the Provider Agreement between Caremark and Kentucky.

Here, Kentucky attempts to distinguish between claims for which it agreed to waive its Eleventh Amendment immunity—that is, those claims filed with the AAA—and "every possible dispute that might arise out of the Agreement." (Reply at 4.) Accepting that the Provider Agreement waived Kentucky's sovereign immunity to proceedings brought to arbitration before the AAA, Kentucky asserts that no 'clear and unequivocal' waiver of sovereign immunity existed as to the JAMS Amendment because Kentucky could not avoid being bound by the amendment except by terminating the agreement. (MTD at 12; Reply at 3, 6.) But Kentucky does not contest the validity of the contract itself—it challenges only the JAMS Amendment. (Reply at 6–8.) Under the holdings of both *Chickasaw* and *Choctaw*, a valid contract exists between Kentucky and Caremark. *Choctaw*, 104 F.4th at 89 (holding contracts with a disputed arbitration provision valid when the parties did "not disavow the contracts entirely").

Next, the *Choctaw* court concluded that the Caremark "Provider Manuals . . . clearly and unambiguously waived the Nation's sovereign immunity from arbitration proceedings in the District of Arizona." *Id.* at 94. While the *Choctaw* court specifically examined whether the District of Arizona properly had jurisdiction to compel arbitration proceedings, the Ninth Circuit's holding readily applies to this case. *Id.* ("[The Supreme] Court's reasoning applies with equal force to the issue presented here: whether under the express terms of the Provider Manuals . . . the Nation waived its immunity as to a motion to compel arbitration proceedings brought in the District of Arizona, the jurisdiction where any arbitration is to take place under the arbitration agreement."). *Choctaw* indicates that Kentucky waived its sovereign immunity when it entered into the Provider Agreement and

- 6 -

may be compelled to arbitration, a result that "reflects the real world end of permitting suit in a competent jurisdiction to initiate the arbitration proceedings that the parties' agreement otherwise plainly allows." 104 F.4th at 94.

Kentucky maintains that it did not waive its immunity by entering into the Provider Agreement, which "[does] not include any other language regarding the waiver of sovereign immunity, whether in connection with the arbitrations or any suits filed in federal court," and that agreeing to the arbitration provision in the 2022 Provider Manual also does not "necessarily result[] in a waiver of sovereign immunity." (MTD at 4.) In light of *Choctaw*, this argument fails. Kentucky willingly entered a contract containing an arbitration provision governed by the FAA when it signed the 2022 Provider Agreement. (Provider Agreement ¶ 15.09.07; Reply at 7.) Section 4 of the FAA provides in relevant part: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may *petition any United States district court* which, save for such agreement, would have jurisdiction under title 28, . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." Thus, by agreeing to arbitration as governed by the FAA, Kentucky agreed that an aggrieved party to the agreement may move a district court, such as the present one, for an order compelling arbitration, as Caremark has done in this case. As in *Choctaw*, "the 'relevant documents in this case' are not 'silent with respect to [Kentucky's] consent to suit'" in federal court in Arizona. *Choctaw*, 104 F.4th at 93 (quoting *McClendon v. United States*, 885 F.2d 627 (9th Cir. 1989)).

Courts recognize the FAA as a "liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Thus, "courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted). For all of these reasons, the Court finds the acceptance and execution of the Provider Agreement and the incorporated Provider Manual waive Kentucky's sovereign immunity as to Caremark's claim demanding arbitration.

In Kentucky's argument that the JAMS Amendment to the 2022 Provider Manual is invalid as a unilateral contract of adhesion, Kentucky raises the ultimate question before the Court in this case, which the Court will answer when it resolves the competing Motions to Compel Arbitration (Docs. 55, 94).

**IT IS THEREFORE ORDERED** denying Defendants the University of Kentucky, the University of Kentucky Board of Trustees, and Members of the University of Kentucky Board of Trustees' Motion to Dismiss Complaint (Doc. 72).

Dated this 19th day of September, 2024.

Honorable John J. Tuchi
United States District Judge