**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Caremark LLC, *et al.*, | No. CV-23-01994-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Allied Health Services Incorporated, *et al.*, | |
| Defendants. | |

At issue are (1) the Motion to Compel Arbitration filed by Plaintiffs Caremark, L.L.C., CaremarkPCS, L.L.C.; and Caremark IPA, L.L.C. (collectively, "Caremark") (Doc. 55), to which 23 of the 24 pharmacy Defendants in this matter[1] (collectively, "Defendants") filed a consolidated Response (Doc. 59), Defendant Mission Wellness Healthcare, L.L.C. ("Mission") filed a Joinder to the Response (Doc. 60), and Caremark filed a Reply (Doc. 56); (2) Defendants' Motion to Compel Arbitration (Doc. 94, Defs.' Mot.), to which Caremark filed a Response (Doc. 97, Caremark Resp.), and Defendants filed a Reply (Doc. 98, Defs.' Reply); and (3) Defendants' Motion for Status Conference (Doc. 108), to which Caremark filed a Response (Doc. 110), and Defendants filed a Reply (Doc. 112). The Court finds these matters appropriate for resolution without oral argument. *See* LRCiv 7.2(f).

---

[1] The Court considers Defendants the University of Kentucky, the University of Kentucky Board of Trustees, and members of the University of Kentucky Board of Trustees (collectively, "Kentucky") as one pharmacy network.

## I. BACKGROUND

Caremark is a pharmacy benefit manager that contracts with various individual pharmacies and chains ("Providers"), including Defendants and Mission. (Doc. 54, Compl. ¶¶ 81, 85.) The contractual relationship between the parties is governed by a series of documents, including a Provider Agreement executed by each Defendant and Caremark. (Compl. ¶¶ 84–85.) The Provider Agreement incorporates by reference the 2022 Caremark Provider Manual, which contains a dispute resolution clause specifying procedures for parties to settle disputes and includes an arbitration agreement. (Compl. ¶ 87.)

The Provider Manual's arbitration provision states that "any and all disputes between Provider and Caremark . . . including, but not limited to, disputes in connection with, arising out of, or relating in any way to, the Provider Agreement or to Provider's participation in one of more Caremark networks . . . will be exclusively settled by arbitration." (Compl. Ex. 2, Provider Manual ¶ 15.09.) It also includes a delegation provision that states, "The arbitrator(s) shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of the agreement to arbitrate including, but not limited to, any claim that all or part of the agreement to arbitrate is void or voidable for any reason." (Provider Manual ¶ 15.09.) Further, the Provider Manual sets forth the conditions an aggrieved party must satisfy before filing arbitration, including issuing a Dispute Notice and engaging in good faith in a dispute resolution conference with the other party. (Provider Manual ¶ 15.09.07.) The Provider Manual also states, "This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ['FAA']." (Provider Manual ¶ 15.09.07.)

Caremark periodically amends the Provider Manual "by giving notice of the terms of the amendment and specifying the date the amendment becomes effective." (Compl. ¶ 93.) On August 2, 2023, Caremark informed its providers, including Defendants and Mission, that an amended Provider Manual would go into effect on August 10, 2023, superseding the 2022 version. (Compl. ¶ 102.) The amended Provider Manual changed the

arbitration venue from AAA to JAMS ("JAMS Amendment"), but it did not otherwise alter the dispute resolution process. (Compl. ¶ 104.) On August 9, 2023—one day before the JAMS Amendment stated it went into effect—Defendants and Mission initiated arbitration proceedings before the AAA pursuant to the terms of the 2022 Provider Manual, allegedly without first engaging in the dispute resolution process prescribed in the Provider Manual. (Compl. ¶¶ 109, 208–13.)

Caremark filed this lawsuit on September 22, 2023 (Doc. 2)[2] seeking declaratory and injunctive relief in the form of an order (1) compelling Defendants and Mission to comply with the conditions precedent set forth in the Provider Manual before filing arbitrations against Caremark, (2) enjoining the ongoing AAA arbitrations initiated by Defendants and Mission, and (3) compelling arbitrations under the JAMS Amendment. (Compl. ¶¶ 217–46.) Within a week of filing the lawsuit, Caremark filed a motion to compel arbitrations before JAMS and stay the AAA arbitrations. (Docs. 8, 55.)

After a hearing (Doc. 85) and supplemental briefing (Docs. 88–90), the Court entered an Order on April 29, 2024 (Doc. 91) granting in part Caremark's request to stay arbitration, thereby allowing scheduling, discovery, and discovery-related motion practice in the AAA arbitrations to go forward but staying pre-hearing dispositive and structural motions, merits hearings, and subsequent steps in the AAA arbitrations. The Court deferred ruling on Caremark's request to compel arbitrations before JAMS, and that aspect of Caremark's Motion is pending before the Court. (Doc. 91.)

On June 20, 2024, Defendants filed their own motion to compel arbitration—but before the AAA, not JAMS—arguing among other things that threshold procedural questions like those raised by Caremark in resisting the AAA arbitrations are for the arbitrator to decide. (Defs.' Mot. at 2–3.)

On October 25, 2024, Defendants informed the Court of a decision by a District Judge in the Southern District of New York upholding an award in favor of a Provider and

---

[2] Although Caremark lodged the original Complaint under seal (Doc. 2), the Court ordered Caremark to re-file the Complaint on the public docket with the confidential portions redacted (Doc. 47), which Caremark filed on December 8, 2024 (Doc. 54).

- 3 -

against Caremark determined by an AAA arbitral panel under an arbitration agreement in a pre-2023 Provider Manual, where the Judge concluded that the arbitral panel did not exceed its authority in awarding equitable damages to the Provider. (Doc. 108 (citing *Caremark, L.L.C. v. N.Y. Cancer & Blood Specialists*, 2014 WL 3413470 (S.D.N.Y. July 15, 2024)).) Based on that decision, Defendants ask the Court for a status hearing to consider lifting the stay on the AAA arbitrations to permit at least dispositive motion practice there. The Court will now resolve all the pending motions.

## II.   ANALYSIS

The Court's disposition of this case is, for the moment, straightforward, although the parties' extensive briefing on the pending motions did not make it so.

The arbitration agreements at issue here are governed by the FAA. *See* 9 U.S.C. § 2. Courts have recognized the FAA as a "liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). When presented with a dispute implicating the FAA, a court must compel arbitration if the court determines that a valid agreement to arbitrate exists and that the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

In the briefing on their motion to compel arbitration,[3] Defendants argue among other theories that "[t]he issue of whether Defendants met conditions precedent to filing [the AAA] arbitrations is for the Arbitrator to decide" (Defs.' Mot. at 16 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002)))—a proposition with which the Court agrees. But in this instance, the question of whether the Court must compel arbitration does not turn on an examination of the enforceability of the delegation clause in the Provider Manual, as Defendants argue. (Defs.' Mot. at 8–15; Defs.' Reply at 10.) Nor does the question whether the AAA arbitrations should proceed depend on the enforceability of the JAMS Amendment, as Caremark argues, because it is undisputed that Defendants initiated the AAA arbitrations on August 9, 2023, such that the 2022 Provider

---

[3] The Court finds no merit to Caremark's contention that Defendants' motion to compel arbitration is an improper surreply to Caremark's motion to compel arbitration, because Defendants' motion asks for affirmative relief that is distinct from Caremark's request for relief and the motion is permissible under the applicable rules.

Manual providing that AAA is the proper arbitration forum was still in effect. Caremark's resistance to the AAA arbitrations consists only of an argument that Defendants did not meet the conditions precedent to initiating arbitration under the Provider Manual, including engaging in good faith in the pre-arbitration dispute-resolution process.

In *Howsam*, the Supreme Court distinguished between a "question of arbitrability" on one hand, which the Court stated arises in the "narrow circumstance" in which contracting parties seek resolution of an issue of substantive arbitrability such as whether an arbitration clause covers certain claims, and procedural matters on the other hand, which the parties would expect an arbitrator to decide. 537 U.S. at 83–85 (citing, *inter al.*, Revised Uniform Arbitration Act of 2000 (RUAA); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–47 (1964); *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241–43 (1962)). Resolution of a "question of arbitrability"—that is, "[w]hether the parties have submitted a particular dispute to arbitration"—"is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Id.* at 83 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)) (alteration in original). A contractual provision delegating a "question of arbitrability" to an arbitrator is commonly known as a delegation clause or a delegation provision. *See, e.g.*, *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021). But the enforceability of a delegation provision is not at issue where there is an agreement to arbitrate and the unresolved question simply concerns a prerequisite to arbitration "such as time limits, notice, laches, [and] estoppel." *Howsam*, 537 U.S. at 83–85 (citing RUAA § 6 cmt.2). In that instance, the question is presumptively for an arbitrator to decide. *Id.* at 84 (citing *John Wiley*, 376 U.S. at 557).

The *Howsam* Court concluded that the question there—whether the underlying dispute was more than six years old such that it was barred under a time-limit rule–was not a "question of arbitrability" but rather a threshold procedural issue and therefore "presumptively for the arbitrator, not for the judge" to decide. *Id.* at 85. Here, the parties do not dispute that the 2022 Provider Manual contains a valid and enforceable arbitration provision covering the underlying claims. The question Caremark raises—whether

Defendants met the procedural prerequisites to initiating the AAA arbitrations—is a threshold procedural issue to be decided by the arbitrator. *Id.* at 85; *see also BG Group, PLC v. Republic of Argentina*, 572 U.S. 25, 34–35 (2014). The parties raise no other issues to the propriety of the AAA arbitrations under the 2022 Provider Manual, so the Court will enforce the parties' arbitration agreement in the 2022 Provider Manual, lift the stay on the AAA arbitrations and compel them to go forward. *See AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

Although Mission did not join in Defendants' motion to compel arbitration, the analysis set forth here applies with equal force to Mission, which has constructively represented that it also initiated arbitration before the AAA on August 9, 2023, under the arbitration agreement in the 2022 Provider Manual. (*See* Docs. 60, 65, 90.) The Court will therefore include Mission in the relief granted in this Order. The Court will in its discretion stay this proceeding pending the results of the AAA arbitrations. *See* 9 U.S.C. § 3; *AT&T Mobility*, 563 U.S. at 344.

**IT IS THEREFORE ORDERED** denying without prejudice Plaintiffs' Motion to Compel Arbitration (Doc. 55).

**IT IS FURTHER ORDERED** granting Defendants' Motion to Compel Arbitration (Doc. 94). The stay on the ongoing AAA arbitrations is lifted, and the parties, including Mission Wellness Healthcare, L.L.C, are directed to promptly proceed with arbitrations consistent with the terms of their arbitration agreement in the 2022 Provider Manual. Threshold procedural issues, including whether Defendants met the procedural prerequisites to initiating the AAA arbitrations as set forth in the 2022 Provider Manual, shall be resolved by the arbitrators.

**IT IS FURTHER ORDERED** staying the present litigation matter in this Court pending the results of the AAA arbitrations. The parties shall jointly file a status report by **May 17, 2025**, as well as within seven days of a final decision by any arbitrator.

/

/

**IT IS FURTHER ORDERED** denying as moot Defendants' Motion for Status Conference (Doc. 108).

Dated this 22nd day of November, 2024.

_____
Honorable John J. Tuchi
United States District Judge